In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| Lee Burgess, #235516, ) | Civil Action No. 9:06-2335-GRA-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Jon E. Ozmint, Director of SCDC; ) | |
| H. McKinney, Doctor at Kershaw ) | |
| Correctional Institution; FNU Coley, ) | |
| Nurse at Kershaw Correctional ) | |
| Institution; and FNU Alewine, Doctor, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. INTRODUCTION

The Plaintiff, Lee Burgess ("Plaintiff" or "Burgess"), was an inmate of the South Carolina Department of Corrections ("SCDC") housed in the Kershaw Correctional Institution ("Kershaw CI") at the time of the alleged incidents giving rise to this action.[1] Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 from Jon E. Ozmint, Director of SCDC ("Director Ozmint"), H. McKinney, Doctor at Kershaw CI ("Dr. McKinney"), FNU Coley, Nurse at Kershaw CI ("Nurse Coley"), and FNU Alewine, Doctor ("Dr. Alewine") based upon allegations of deliberate indifference to his serious medical needs.

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to review all pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

---

[1] By letter filed with the Clerk of Court on November 3, 2006 [9], Plaintiff has informed the court that he has been released from the custody of the SCDC.

## II.    *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal.  The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v.*

*Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).  Such is the case with the present complaint.

## III.  FACTUAL BACKGROUND

The evidence, either uncontested or taken in the light most favorable to the Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are set forth below.

According to Plaintiff, he injured his knee when he was a child, and again injured it when he served in the military.[2]  He claims that when he first was incarcerated in the SCDC, he told the medical staff at Kirkland Correctional Institution R & E that he "had problems" with his right knee and had injured it while serving in the military.[3]

Plaintiff was seen by the medical office Kershaw CI for his right knee on April 16, 2004, and again on April 23, 2004; Plaintiff complained it was hurting and "giving out." Some time after arriving at Kershaw CI, Plaintiff was assigned to the top bunk in a three-man cell.  He asked the officer on duty whether he could be moved to the bottom bunk, and was told that his request would have to be approved by medical.  Plaintiff went to sick call and explained his problem to a nurse, who made an appointment for him to see Dr. McKinney on May 27, 2004.  At that appointment, Plaintiff claims he told Dr. McKinney that his right knee hurt and gave way sometimes.  Dr. McKinney examined Plaintiff and diagnosed chronic arthritis of the right knee.  Plaintiff asked for a bottom bunk pass from Dr. McKinney, who told Plaintiff that he could not provide a bottom bunk pass for Plaintiff's condition.[4]

---

[2]  *See* Plaintiff's Affidavit [11] at p. 1.  Plaintiff also had injured his knee as a child, but admits by Affidavit that he did not tell anyone at the Kirkland R & E or at KCI about that childhood injury.  [11]

[3]  *Id.*

[4]  *See* Plaintiff's Complaint [1] at p. 3.

On August 29, 2005, as Plaintiff was getting down from the top bunk, his knee went out, causing him to fall on the floor and hit his head and ribs. Plaintiff alleges he tried to be seen by medical; he told Nurse Coley he had fallen from the top bunk and showed Nurse Coley his bruises on his face and arm.[5] Plaintiff alleges that Nurse Coley told him to go back to the dorm. Plaintiff missed sick call that same day because he was asleep; he was seen the next day and treated by Dr. McKinney, who prescribed ted hose, an ice pack, an Ace bandage, and walking cane. Dr. McKinney gave Plaintiff a bottom bunk pass and told him to elevate his leg. The Plaintiff subsequently returned several times and was seen by nurses (not a doctor) because of pain in his arm, upper back and neck, and loss of use of his fingers.[6]

On October 12, 2005, Plaintiff was sent to the Springs Memorial Hospital ER for the injuries he received from the fall on August 29. He saw Dr. Wagner, who after examining him told him his upper vertebra was twisted, which caused a pinched nerve, which in turn caused the problems with his fingers. Dr. Wagner referred Plaintiff to a neurologist, whom Plaintiff saw in December 2005.

On January 13, 2006, Plaintiff went to University Specialty Clinics and was seen by Dr. Cuturic, who recommended Plaintiff see an orthopedist and get an MRI. Dr. Cuturic recommended surgery, and told Plaintiff that surgery might repair his ulnar nerve. On February 2, 2006, Plaintiff underwent a CAT scan and an MRI. On February 13, he was seen by an orthopedist, who referred him to a neurologist. On March 3, Plaintiff saw Dr. Cuturic, who increased his medicine and referred him to a neurosurgeon. On March 21, Dr. David Lovice, an ENT physician, told Plaintiff that the pain in his neck and shoulder was caused by his spine. On March 23, Plaintiff was seen by a member of the University of South Carolina Department of Neurosurgery saw the Plaintiff. The Plaintiff was noted to have significant

---

[5]     *See* Plaintiff's Affidavit [11].

[6]     Complaint [1] at ¶¶ 3-4.

cervical spine spondylosis, which was causing left arm radicular symptoms as well as ulnar entrapment.  The neurosurgeon recommended ulnar decompression, Tylenol #3 for pain, and cervical traction, if allowed by SCDC, to treat the cervical spondylosis.  If this conservative treatment did not work, the neurosurgeon recommended an anterior cervical procedure and fusion surgery.

In June 2006, Plaintiff again saw Dr. Cuteric, who increased his Neurontin and concurred with the neurosurgeon's evaluation.  In July, Plaintiff went to medical at Lee CI, to which he had been transferred, and learned that Dr. Alewine had disapproved the surgeries.[7]  Plaintiff was released from SCDC custody in November 2006.

Plaintiff claims he was wrongly denied a bottom bunk pass, "was refused emergency attention" for forty-three (43) days, and that the recommended surgery was disapproved.  Plaintiff alleges he has been in pain for a year.  As a result of the Defendants' deliberate indifference to his medical needs, the Plaintiff requests that the Defendants pay for surgery to his arm and neck; he also seeks monetary damages in the amount of $500,000 for pain and suffering.[8]

## IV.  PROCEDURAL HISTORY IN FEDERAL COURT

On July 15, 2006, Plaintiff commenced this Section 1983 action against the defendants Director Ozmint, Dr. McKinney, Nurse Coley, and Dr. Alewine (collectively, the "Defendants"), alleging deliberate indifference to his medical needs.[9]  [1]  In response, the undersigned issued an Order directing the issuance of summonses, and directed the Defendants to file answers to the complaint.  [3]  On September 19, 2006, the Defendants

---

[7]  Complaint [1] at ¶¶ 5-6.

[8]  *Id.* at p. 7.

[9]  Plaintiff has the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), should a limitations issue arise in this action.  *See* Order dated August 22, 2006.  [3]

timely filed an Answer to the Plaintiff's Complaint which, in pertinent part, alleged as an affirmative defense that Plaintiff had failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 (the "PLRA").  [6]

On October 31, 2006, the Defendants filed a Motion for Summary Judgment along with a supporting memorandum.  [7-1 - 7-5]  On November 1, 2006, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), which notified Plaintiff of the Defendants' Motion, the dismissal procedure and the possible consequences if Plaintiff failed to adequately respond to the Defendants' Motion within thirty-four (34) days. [8]  In response, on December 12, 2006, the Plaintiff filed his Affidavit and exhibits in opposition to Defendants' Motion for Summary Judgment.  [11]  The matter is now ripe for review by the undersigned United States Magistrate Judge.

## V.  THE STANDARD FOR DETERMINING A MOTION FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleading is appropriate.  Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial."  Rule 56(e), Fed.R.Civ.P.

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).  The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party.  *Id*.  While the court is to afford liberal consideration to a complaint filed by a *pro se* plaintiff, it is not required to ignore a clear failure of proof with respect to any question of fact.  To the contrary, " 'the mere existence of some alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' " *Id*. (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

In this case, the Defendants "bear[] the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the defendants carry this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id*. at 718-19 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id. and Doyle v. Sentry Inc.*, 877 F.Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed.R.Civ.P. 56(e) ], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Baber, citing Celotex Corp.*, *supra*. The non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data General Corporation*, 12 F.3d 1310, 1316 (4th Cir. 1993) *and DeLeon v. St. Joseph Hospital, Inc.*, 871 F.2d 1229, 1233 (4th Cir. 1989), n. 7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547 (5th Cir. 1987), *and Evans v. Technologies Applications & Services Co.*, 875 F.Supp. 1115 (D.Md. 1995).

## VI.  ANALYSIS

### A.  The Plaintiff has Exhausted his Administrative Remedies

The Prison Litigation Reform Act of 1996 (the "PLRA"), codified as amended at 42 U.S.C. § 1997e(a), provides in relevant part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.").  Thus, the PLRA requires prisoners bringing actions concerning prison conditions or other federal law to exhaust all available administrative remedies before suing in federal court.  *See Porter*, 534 U.S. at 532; *Booth v. Churner*, 532 U.S. 731, 741 (2001).  "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court."  *Jones v. Bock*, Nos. 05-7058, 05-7142, 127 S.Ct. 910, 2007 WL 135890, *8 (Jan. 22, 2007) (*citing Porter*, 435 U.S. at 524).

In the present case, the Plaintiff properly exhausted his administrative remedies prior to filing suit.  The Plaintiff filed a grievance alleging he failed to receive proper medical treatment.[10]  He pursued the South Carolina Department of Corrections' grievance process through Step 2[11] and appealed the denial of his grievance to the South Carolina Administrative Law Court.[12]  Therefore, the court will turn to the merits of the case.

---

[10]  *See* Step 1 Inmate Grievance Form attached to Complaint.

[11]  *See* Step 2 Inmate Grievance Form attached to Complaint.

[12]  *See* Notice of Appeal to Administrative Law Court, dated April 27, 2006, attached to Plaintiff's Complaint.  [1]  This court is of the opinion that the Administrative Law Court ("ALC") review of certain inmate appeals in prison condition cases is not an "administrative remedy" for purposes of the Section 1997e(a) exhaustion requirement. Instead, it is more appropriately viewed as the first step in the "Judicial review" process by the S.C. court system under South Carolina's Administrative Procedures Act. See S.C.Code Ann. § 1-23-610(B).  First, requiring exhaustion of administrative remedies is primarily intended to allow agencies to complete their review processes, and, in effect,

### B.  The Plaintiff Fails to State a Cause of Action Against SCDC Director Ozmint

The Plaintiff has named Director Ozmint as a Defendant in the caption of the Complaint, but he does not mention Director Ozmint in the body of the Complaint and does not allege any specific or general acts or conduct on his part which violated Plaintiff's constitutional rights.  Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for the name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints.  *Davis v. Sancegraw*, 850 F. Supp. 809 (E. D. Mo. 1993); *Potter v. Clark*, 497 F.2d. 1206 (7th Cir. 1974).  Furthermore, a claim is not cognizable in a Section 1983 action when the plaintiff does not allege that the defendant was personally involved in, or directly responsible for, incidents that injured the plaintiff.  *Martin v. Sargent*, 780 F.2d. 1334 (8th Cir. 1985).  Therefore, it is recommended that Director Ozmint be dismissed from the Complaint.

---

correct their own errors, before a court Intervenes.  *See, e.g., McKart v. United States*, 385 U.S. 185 (1969).  Second, the ALC reviews decisions from a number of state agencies.  *See, e.g.*, S.C.Code Ann. §§ 40-15-210 (dentistry matters); 40-23-95 (environmental certification); 40-29-60 (manufactured homes standards); 40-33-120 (nursing matters); 49-21-40 (water drainage matters); 61-2-260 (contested liquor licenses). Thus, the ALC's jurisdiction is not confined to review of prison matters.

It appears that in this case, SCDC's exercise of true agency expertise ends when it issues a final response through its answer to an inmate's Step Two grievance. This conclusion is based upon SCDC policy, which mandates that the answer an inmate receives to the Step Two grievance "will be the Department's final response in the matter ... [t]he Department's final response implies the Department Director's approval."  See SCDC Inmate Grievance System, policy # GA-01.12(14)(d) (Issued: April 1, 2000) (emphasis added).  The distinction between administrative remedies which must be exhausted under Section 1997e(a) in Section 1983 cases, such as the one at bar, and state court remedies which must be exhausted in habeas cases (application of sentencing credits, review of disciplinary actions, and other matters affecting the execution of a valid state sentence) leads the court to conclude that exhaustion under Section 1997e(a) ends at the issuance of the SCDC's final response (Step Two) in non-habeas prison condition cases even though Administrative Law Court review remains a necessary step in the exhaustion of state court remedies required in habeas matters.  *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 490-91, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); *Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir.1997) ("To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court.").

## **C.  Plaintiff's Section 1983 Claims Against the Defendants**
## **in their Official Capacities**

Section 1983, the primary basis for jurisdiction of the Plaintiff's lawsuit, provides in part:  "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  Accordingly, as required by statute, the Plaintiff must meet two requirements to bring suit under Section 1983.  First, he must show that the Defendants deprived the Plaintiff of his rights "under color of" state law, and second, that the deprivation is of a right guaranteed by the Constitution or laws of the United States.  Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).

During the times alleged in the Complaint, all of the Defendants were employees of the SCDC.[13]  The Defendants contend, and this court agrees, that Plaintiff's suit against the Defendants, in their official capacities, as employees of the SCDC, is barred by the Eleventh Amendment, which acts to bar suits against a state by citizens of another state or a foreign country and bars suits against a state by citizens of that state.  *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984) (although the express language of Eleventh Amendment only forbids suits by citizens of other States against a State, the Eleventh Amendment bars suits against a State filed by its own citizens).  This immunity from suit conferred on states by the Eleventh Amendment extends to suits against state agencies, such as the SCDC, and its employees.  A suit against state officials in their official capacities is construed as being against the State itself and is barred by the Eleventh Amendment absent

---

[13]     *See* Defendants' Memorandum [7-2] at p. 2.

consent to suit or waiver of immunity. *Pennhurst*, at 98-100; *see also Jensen v. Conrad*, 570 F. Supp. 91, 97 (D.S.C. 1983), *aff'd.* 747 F.2d 185 (4th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1985); *Coffin v. S. C. Department of Social Services*, 562 F. Supp. 579, 584 (D.S.C. 1983).

Although Congress may expressly abrogate a State's Eleventh Amendment immunity pursuant to its enforcement power under the Fourteenth Amendment, the Supreme Court has consistently held that neither a State agency nor a State official in his official capacity is a "person" for purposes of a Section 1983 damages action. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Therefore, since Congress did not waive a state's Eleventh Amendment immunity when it enacted Section 1983, any claims for damages under this section against the Defendants are barred.

### D.  Plaintiff's Section 1983 Claims Against the Defendants in Their Individual Capacities

While neither a State nor a State official in his official capacity is a "person" for purposes of a Section 1983 damages action, a State official may be sued for damages in his or her individual capacity (as opposed to official capacity) under Section 1983 for an intentional deprivation of constitutional rights under color of state law. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991) (*per curiam)*. In order to state a claim under Section 1983, the Plaintiff must show that the Defendants deprived the Plaintiff of a right, privilege or immunity secured by the Constitution or Federal law and that in doing so the Defendants acted under color of state law. *Chiles v. Crooks*, 708 F. Supp. 127, 129 (D.S.C. 1989); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977). A prisoner makes out a claim under the Eighth Amendment if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). First, to establish that a health care provider acted with deliberate indifference to a serious medical need, a plaintiff must establish that the defendants acted with an indifference that would "offend evolving

standards of decency." *Estelle*, at 104.  Under this standard, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.  Deliberate indifference is a very high standard and a showing of mere negligence will not meet it.  *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999) (*citing Estelle*, 429 U.S. at 105-06).  Second, a plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment.  *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases).  "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'"  *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988)).

From a constitutional perspective, the state is not required to furnish prisoners the best of care, only reasonable care.  *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).  "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988).  In *Estelle v. Gamble*, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken.  The Supreme Court pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." *Id*. at 105.  Furthermore, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983.  *Estelle v. Gamble, supra*.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle, supra* at 106.  Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants.  Negligence, in general, is not actionable under 42 U.S.C. § 1983.  *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94

(4th Cir.1987); *and Pink v. Lester*, 52 F.3d 73, 78 (4th Cir.1995) (applying *Daniels v. Williams* and *Ruefly v. Landon*: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200-03 (1989). Thus, even if the Plaintiff were able to show that a Defendant's actions somehow constituted negligence, medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

A Section 1983 claim is not stated by disagreements between an inmate and a physician as to treatment or as to a diagnosis. *Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986); *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977). A health care provider's method of diagnosis and choice of treatment of an inmate is not subject to judicial review. *Peterson v. Davis*, 551 F. Supp 137, 146 (D. Md. 1982), aff'd 729 F.2d 1453 (4th Cir. 1984).

For the reasons set forth below, the undersigned does not find that the Plaintiff has set forth sufficient evidence to create a genuine issue of fact as to whether his constitutional rights were violated by any named Defendant, and it is recommended that this case be dismissed.

The Defendants have provided the court with the Affidavit of Harry D. McKinney, Jr., M.D., the Affidavit of J. Glenn Alewine, M.D., and a copy of Plaintiff's medical summary from April 16, 2004 to August 18, 2006. Dr. McKinney saw Plaintiff for the first time on April 23, 2004, at which time he examined Plaintiff's right leg and noted varicose veins in his legs and degenerative joint disease in the right knee. Dr. McKinney ordered thigh high ted hose and aspirin and told the Plaintiff to elevate his leg as needed. Dr. McKinney again saw Plaintiff on May 27, 2004 and determined that he did not qualify for a bottom bunk pass. Although Plaintiff continued to be seen in the medical office after May 27, it was not until August 23, 2005, some fifteen (15) months after Dr. McKinney first

examined him, that Plaintiff again complained about his right knee.[14]  On August 23, Plaintiff told a nurse he was walking down the stairs and his knee gave out but he caught himself.  The nurse's examination revealed that Plaintiff's right knee was swollen and warm to the touch.  The nurse gave Plaintiff an appointment to see Dr. McKinney on August 30, at which time he examined the Plaintiff's right leg.  According to Dr. McKinney, Plaintiff never told Dr. McKinney that he had been injured in a fall from his bunk on the previous day.[15]  Dr. McKinney prescribed ted hose, ice packs, an ace bandage, a cane.  According to Dr. McKinney, Plaintiff again was seen by a nurse on September 29, 2005, but did not tell the nurse that he had fallen from his bunk.  Thereafter, Plaintiff was seen on September 30, October 3, and October 6.  Plaintiff was transported to the ER on October 12, at Dr. McKinney's request, for a neurological exam.  Afterwards, Dr. Alewine approved the recommendation for an orthopedic appointment on November 16, 2005.

According to Dr. McKinney, Plaintiff was transferred to Lee CI, and on December 29, 2005, Plaintiff informed medical personnel at Lee that he had fallen from a bunk at Kershaw in August 2005.

Dr. Alewine noted that according to the medical history given by the Plaintiff and the medical records setting forth the results of tests and exams, the Plaintiff's neck, back and arm problems (including his pain and numbness), existed _prior to_ his incarceration, and was not caused by Plaintiff falling out of the top bunk.[16]  Dr. Alewine approved Plaintiff for all recommended consults, medications, procedures, and tests, but for the neck and arm surgery.  Dr. Alewine's decision not to approve the surgery which Plaintiff sought was based upon the application of three SCDC policies.[17]  SCDC Policy #HS-18.15, Section 1. 1 provides:

---

[14]    *See* McKinney Affidavit at p. 2.

[15]    *See* McKinney Affidavit at p. 3.

[16]    *See* Alewine Affidavit at p. 2.

[17]    *See* Alewine Affidavit at p. 2.

> [I]nmates will receive medically necessary care throughout their period of incarceration until they are released. Medically necessary care includes treatment needed to maintain and/or prevent deterioration of an inmate's health (other than that which would occur due to the uncontrollable progression of a disease or aging). Medically necessary care does not include elective surgery or services.

Section 5.10, titled "Elective Health Care," provides:

> Elective treatment or surgery may be recommended by consulting surgeons or physicians. The final decision regarding the necessity or [sic] surgery or treatment will be made by the authorizing physician at the SCDC[.][18]

Finally, Section 15.3.2 states in part:

> [The] final decision regarding necessity of surgery/treatment will be made by the authorizing physician at the SCDC, taking into account: if the treatment or surgery is needed to correct a functional deficit; and if an existing pathological process threatens the well-being of the inmate over a period of time; and if the inmate's remaining sentence is adequate to allow appropriate after-care following a procedure.

By Affidavit, Dr. Alewine states that he is "the authorizing physician at the SCDC," and when deciding whether to approve the surgery for Plaintiff, he confirmed that the Plaintiff's max-out date was in November 2006. Approving the surgery would not have been consistent with SCDC policy, because Plaintiff's release date did not provide adequate time for SCDC to provide appropriate after-care following the surgery. Finally, Dr. Alewine noted that although the Plaintiff had pain, his neck and arm problems were not threatening to his well-being, because Plaintiff was receiving conservative therapy, including medication, while incarcerated. Dr. Alwine also states that he did not act with deliberate indifference or violate any standards of practice in his care and treatment of the Plaintiff.[19]

As discussed above, the Plaintiff has no constitutional guarantee of the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811 (1st Cir.1988). That Plaintiff is dissatisfied with the treatment provided by SCDC is unfortunate, but is insufficient to support a claim under Section 1983. *Sosabee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). The Affidavits by Drs.

---

[18]   *See* Alewine Affidavit at p. 2, attached at Tab 3 to Defendants' Memorandum in Support of Motion for Summary Judgment. [7-++]

[19]   *See* Alewine Affidavit at p. 3, attached at Tab 3 to Defendants' Memorandum in Support of Motion for Summary Judgment. [7-++]

McKinney and Alewine, and the medical summary show that the Defendants were not deliberately indifferent to the Plaintiff's health needs.  On this record, the Defendants gave continuous care to Plaintiff, including medication and outside appointments for examinations and tests of his neck, back and arm.  There is no suggestion here that Plaintiff's condition ever become serious or life threatening, which would have required immediate or emergency care.  The Court does not find that any genuine issue of material fact exists as to whether Defendants' treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).  Accordingly, the Plaintiff fails to demonstrate that the Defendants were deliberately indifferent to his health or safety, and therefore, he fails to state a claim pursuant to the Eighth Amendment.

After careful review and consideration of the evidence and exhibits submitted to this Court, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.  Under the applicable case law, it is readily apparent that Plaintiff's claim is subject to dismissal because he has failed to show that any named Defendant was deliberately indifferent to a serious medical need that he had, or that any named Defendant acted with a sufficiently culpable state of mind to engage in conduct harmful to the Plaintiff.  *See generally, Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (in order to establish a constitutional claim, an inmate must show not only a sufficiently serious deprivation of a basic human need, but that the offending official engaged in the alleged adverse conduct with a sufficiently culpable state of mind).

## **RECOMMENDATION**

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment **[7] be granted.**

*[signature]*
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

February 28, 2007

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).